UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JENNY CRUZ | : | Case No.   19-cv-8267 |
| *Plaintiff,* | : | |
| - against - | : | **Verified Complaint** |
| METROPOLITAN TRANSPORTATION AUTHORITY, | : | |
| *Defendant.* | : | Trial by Jury |

Plaintiff, Jenny Cruz, by and through her attorneys, Wolin & Wolin, complaining of the defendant, Metropolitan Transportation Authority, alleges as follows:

### Introduction

1.     This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the New York State Executive Law, §§ 296 and 297, for employment discrimination based upon gender (female) and reprisal (prior protected EEO activity).  Plaintiff alleges that defendant discriminated and retaliated against her and created a hostile work environment on account of her gender and in retaliation for her protected EEO activity.  Plaintiff seeks appropriate monetary relief as well as appropriate and other relief to redress the wrongdoing complained of herein.

### Statement Pursuant to Local Rule 9

2.     For purposes of complying with Local Rule 9, plaintiff states that she has no parent subsidiary, or affiliate and that there are no other interested parties.

**Jurisdiction & Venue**

3.      Jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 2000e-5(f) and the Court's supplemental jurisdiction.

4.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 2000e-5(f)(3).

**Jury Demand**

5.      Plaintiff demands a trial by jury in this action on each and every one of her claims.

**Parties**

6.      Plaintiff, at all times relevant hereto, was and still is a resident of New York County, State of New York and a citizen of the United States of America.

7.      Defendant Metropolitan Transportation Authority ("MTA") was and still is a public authority operating under and by virtue of the laws of the State of New York and maintaining a principal place of business in the City, County and State of New York at Two Broadway.

8.      Defendant, at all times relevant hereto, was and still is in the business of providing interstate public transportation services by rail and as defined pursuant to 49 U.S.C. § 5331 and 49 C.F.R. § 655 *et seq.*

9.      In furtherance of its business purposes, defendant maintains and operates a Police Department, of which plaintiff is a member.

10.      Defendant is a corporation engaged in an industry and/or activity affecting commerce, as defined in 42 U.S.C. § 2000e(g)(h).

11.     At all relevant times, defendant MTA had and still has at least fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Therefore, defendant is an "employer" for purposes of 42 U.S.C. § 2000e *et seq*. and other relevant statute.

## Exhaustion of Administrative Remedies

12.     On or about April 3, 2017, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") which was assigned Charge No. 520-2017-01917.

13.     In said Charge of Discrimination, plaintiff alleged that defendant had discriminated against her based upon her gender and in retaliation for her prior protected activity.

14.     On or about March 5, 2019, plaintiff filed a Supplemental Charge of Discrimination with the EEOC under Charge No. 520-2017-01917.

15.     In said Supplemental Charge of Discrimination, plaintiff alleged that defendant had continued to discriminate against her based upon her gender and in retaliation for her prior protected activity.

16.     On June 10, 2019, the EEOC issued a Dismissal and Notice of Rights to plaintiff. Said notice advised plaintiff of her right to file an action against defendant in the appropriate federal court within ninety (90) days of her receipt thereof.

17.     Plaintiff filed this action within ninety (90) days of her receipt of the Dismissal and Notice of Rights.

18.     On or about April 3, 2017, plaintiff caused a Notice of Claim to be served upon

defendant, pursuant to the General Municipal Law and Public Authorities Law, in which she alleged that defendant was discriminating and retaliating against her on account of her gender and prior protected activity.

19.     On or about March 5, 2019, plaintiff caused a Supplemental Notice of Claim to be served upon defendant, in which she alleged that defendant had continued to discriminate and retaliate against her.

20.     More than thirty (30) days have elapsed since plaintiff served the notices of claim and the claim remains open and unpaid.

## Facts

21.     Plaintiff is employed as a Police Officer with defendant.  She has been so employed for approximately sixteen (16) years.

22.     At all times relevant hereto, plaintiff has been and is currently assigned to District 5, which is Grand Central Terminal.

23.     During the course of her employment, plaintiff has been subjected to discrimination and a hostile work environment by defendant because of her gender and in retaliation for her prior protected activity.  This conduct, which has been pervasive, ongoing and unwelcome, has no legitimate or justifiable reason and has been ratified, condoned and acquiesced in by defendant.

*Plaintiff's Prior Protected Activity*

24.     Because of defendant's actions, plaintiff has a history of protected EEO activity against defendant.

25.     Plaintiff caused a Charge of Discrimination to be filed with the EEOC on or about

November 5, 2013. (Charge # 520-2014-00306)  In said Charge, plaintiff alleged that, since

in or about 2009, she had been sexually harassed by Police Officer Pablo Hernandez.  Plaintiff

further alleged that, although she repeatedly notified her superiors and defendant's

administration about Officer Hernandez' actions, defendant did nothing to remedy her

complaints.   Plaintiff further alleged that, while ignoring her complaints, defendant

discriminated and retaliated against her.   Plaintiff subsequently supplemented her Charge

(Charge # 520-2014-00638) to reflect the fact that, shortly after she had filed her original

Charge, she received a "Letter of Instruction," from defendant which accused her of violating

policy and procedure.

26.     A Settlement Agreement resolving the then pending EEOC Charges was entered

into in April 2014, as the result of a mediation session held between plaintiff and defendant.

One of the terms of the Settlement Agreement was:

> "C.     Respondent will make every effort not to assign
> the Charging Party to work with Police Officer
> Pablo Hernandez.  If by chance such assignment
> occurs, the Charging Party should advise the
> supervisor that they are not supposed to work
> together, so that the assignment can be changed, if
> feasible."

27.     After the Settlement Agreement was entered into, defendant ensured that

Officer Hernandez and plaintiff were not assigned to the 125th Street Station and Grand Central

Terminal at the same time.  Instead, they would alternate posts.  Defendant also did not

require plaintiff and Officer Hernanez to be at roll call at the same time.  This arrangement of

keeping them apart worked fine and plaintiff no longer had contact with Officer Hernandez.

28.     Suddenly, in or about June 2015, defendant, by Chief Rehbein, placed Officer

Hernandez and plaintiff back in the same building (Grand Central Terminal) and required that they appear at roll call at the same time, despite the fact that plaintiff remained terrified of and traumatized by Officer Hernandez.

29.    Because she believed that defendant had breached the Settlement Agreement by not  keeping Officer Hernandez and her apart, on June 25, 2015, plaintiff wrote  to John D'Agostino, Deputy Chief, Support Services, who was in charge of the Internal Affairs Bureau (IAB).  Plaintiff indicated that she believed that defendant was making "a big mistake keeping me and Officer Hernandez back in the same building."  Plaintiff questioned why defendant was "cancelling the [settlement] agreement."

30.    On June 28, 2015, Chief D'Agostino responded:

> "PO Cruz, every effort has been made and will continue to be made to keep you and PO Hernandez separated.  There has been no cancellation of that effort.  Nonetheless, circumstances will arise when you and PO Hernandez will stand for a short period of time at roll call with other members of the platoon until the Sergeant or Lieutenant completes the roll call.  Afterwards both you and PO Hernandez can go to your separate assignments. During any time you and PO Hernandez happen to be in the same vicinity, all policies and procedures will continue to apply and will be enforced.  If any ay (sic) time any member acts in a way that violates any Department policy proper notifications should be made.  Thank you."

31.    Under said Settlement Agreement, if plaintiff was concerned about an assignment, she could advise the supervisor, so that the assignment could be changed, if feasible.  This happened several times.

32.    Every time plaintiff so advised a supervisor, she received a nasty attitude from the supervisor.  Oftentimes, they would not listen to her concerns.

33.    Plaintiff believed that defendant was breaching the Settlement Agreement as a

direct response to her complaints. She believed that those actions were an effort to punish her and to retaliate against her for having filed the initial Charge and for having complained about assignments, which was her right under the Settlement Agreement.

34.     Subsequent to sending the email to Chief D'Agostino on June 25, 2015, defendant denied plaintiff access to her email at work. Plaintiff believed that defendant did this to discourage and dissuade her from sending anymore emails complaining about her treatment. Plaintiff contacted defendant's Support Specialist to rectify the problem. She was told that her password expired. Plaintiff found this odd because, in her previous 12 years, a similar episode had never happened. Plaintiff's access was eventually restored.

35.     Instead of addressing plaintiff's concerns, defendant compelled plaintiff to continue to attend roll call with Officer Hernandez. At roll call on July 15, 2015, Officer Hernandez repeatedly used the word "fuck" in plaintiff's presence. Plaintiff was the only female present. He then started telling the male officers to "Go behind the door and take a napkin with you." Officer Hernandez was referring to masturbation. Plaintiff felt very uncomfortable and humiliated by Officer Hernandez' comments; especially being the only female in a room full of male officers.

36.     Plaintiff emailed Chief D'Agostino on July 15, 2015 to advise him of this said occurrence. Plaintiff told him "It was a mistake forcing me to stand in the same room with that man after all he put me through. I should not have to tolerate such behavior at my work place anymore."

37.     Defendant continued to ignore plaintiff's pleas. On July 29, 2015, plaintiff reported to roll call. Officer Hernandez was also there. This was extremely disturbing to her.

She was afraid.  Both plaintiff and Officer Hernanez were assigned to Grand Central Terminal. Plaintiff had to spend the entire tour avoiding him.  She could not even use the break room because he would be there as well.  Plaintiff kept reporting these occurrences to defendant and nothing was done.

38.    Defendant was now keeping Officer Hernandez and plaintiff in the same building with posts right next to each other.  Defendant could have continued to assign both to the 125th Street Station, alternately, as had been the practice.  The fact that it did not was purposeful retaliation, continued discrimination, and constituted a breach of the Settlement Agreement.

39.    Chief D'Agostino, when contacted by supervisors, stated that there was nothing to keep Officer Hernandez and plaintiff separated.  To add insult to injury, defendant threatened plaintiff with being AWOL if she did not appear at roll call with Officer Hernandez.

40.    After defendant canceled the alternate posts, it no longer assigned Officer Hernandez to 125th Street Station.  However, it continued to assign plaintiff.  This was also continued retaliation and discrimination.  The 125th Street Station post is an undesirable post and has the reputation of being a punishment post.

41.    As a result of these said breaches of the Settlement Agreement and the continued discrimination, retaliation and hostile work environment, on or about August 3, 2015, plaintiff filed another Charge of Discrimination. (Charge # 520-2015-03414) On or about January 24, 2017, while continuing to be the victim of the discrimination, retaliation, hostile work environment and breaches, plaintiff felt sufficiently intimidated so that she withdrew said Charge.

*The Instant Allegations*

42.     After plaintiff withdrew the Charge, rather than it having a positive affect, defendant and its agents, apparently felt emboldened.  Therefore, defendant and its agents escalated their campaign of breaches, discrimination, retaliation and hostile work environment against plaintiff to the point where it became intolerable.

43.     As a result thereof, plaintiff filed the Charge of Discrimination under Charge No. 520-2017-01917.

44.     Defendant and its agents continued to discriminate and retaliate against plaintiff and breach the Settlement Agreement by regularly ensuring that she and Officer Hernandez had the same assignment.  There was no reason why defendant could not continue to meet its obligation under the Settlement Agreement to ensure that Officer Hernandez and plaintiff had separate assignments.

45.     There was also no reason why defendant could not transfer Officer Hernandez to another District in order to resolve the issue once and for all.  Defendant regularly reassigns officers to other Districts in order to resolve ongoing issues.  However, defendant refused to do so in plaintiff's situation in order to continue to intimidate and spite her, to keep her miserable at work, and to perpetuate the hostile work environment.

46.     Defendant also attempted to dissuade plaintiff from protecting her rights by directing that she could no longer make complaints directly to Chief D'Agostino.  Chief D'Agostino then required that plaintiff go through her command, which made it even more difficult for plaintiff to voice her concerns about her treatment.  This was classic retaliation.

47.     Plaintiff made a complaint to Chief D'Agostino about Officer Hernandez'

continued harassment in October 2016.  At that time, plaintiff wrote:

> "On Friday 10/7/2016, I was scheduled to work my regular tour.
> PO P. Hernandez was in on overtime as well.  He was assigned the
> upper level to keep him away from me.   At 2100 hours. PO
> Hernandez was on my post standing on my podium.  Why was he
> on my post when he was told many times to stay away from me!!!
> I am tired of this.   I thought this was over!!   Please tell that
> monster to stay away from me and stay away from my post!!!"

48.     Instead of doing something about plaintiff's complaint, defendant caused her to
be issued a Command Discipline, which is a disciplinary action.  This Command Discipline
accused plaintiff of violating the Rules and Conduct because she reported the harassment by
Officer Hernandez directly to Chief D'Agostino.

49.     The Command Discipline was intended to intimidate plaintiff and to dissuade
her from engaging in further protected activity.  Plaintiff should not have had to go through
her chain of command to report allegations of harassment and discrimination.   While
defendant disciplined plaintiff, there was no indication that it, in any way, addressed the
underlying issue of Officer Hernandez' continued harassment of plaintiff.

50.     On December 5, 2016, plaintiff made another complaint about Officer
Hernandez' continued harassment.  This time, she wrote a memo to Captain Dominici – not to
Chief D'Agostino.  In this memo, plaintiff noted that, on December 5, 2016, Officer Hernandez,
although he should have been on post and not on a meal period, came into the Annex and sat
down at the same table plaintiff was sitting at while she was having lunch.  As a result, plaintiff
had to cut her meal time short and leave the area.

51.     Plaintiff asked that Officer Hernandez be directed to stay away from her while
she was having her meal.

52.    In response, plaintiff received another Command Discipline dated December 14, 2016 because she reported the complaint to a Captain.

53.    While defendant was intent on dissuading plaintiff from exercising her rights; there was again no indication that plaintiff's concerns were addressed or any action taken against Officer Hernandez.  This was classic retaliation.  To add insult to injury, defendant also proposed to take twelve (12) hours of leave from plaintiff.

54.    Plaintiff acted properly, at all times, by communicating with Chief D'Agostino and Captain Dominici.

55.    The November 20, 2013 Letter of Instruction states "Members shall immediately report any violation or information regarding a potential violation of this manual to a Supervisor."  It did not specify that the "supervisor" must be a Sergeant.  Moreover, the Department Manual states that "In appropriate circumstances, observation or knowledge of a violation or possible violation may be reported to a supervisor other than an immediate supervisor or, the Internal Affairs Bureau (IAB)."

56.    There was no reason why plaintiff had to report continued allegations of breaches, discrimination and retaliation to an immediate supervisor.  Defendant, by so claiming, was seeking to thwart and frustrate plaintiff's  efforts to protest the harassment, discrimination and retaliation.

57.    On February 13, 2017, another issue occurred with Officer Hernandez in the lunch room.  Plaintiff  reported it to her Sergeant.  In response, defendant issued another Command Discipline to plaintiff.  Defendant claimed that plaintiff "entered information deemed not related to your work assignment" into her department memo book.  The alleged

improper entry directly related to Officer Hernandez' actions.  Plaintiff wrote in the memo book "At 2036 hours, I went up to the Annex to take my meal.  I walked in to find PO Hernandez having his meal.  I was forced to eat my meal in the girls locker room."  Defendant stated that this entry was "personal" and not work related.  Again, defendant's actions were continued blatant retaliation.

58.     On March 7, 2017, plaintiff was assigned to the 125th Street Station.  By this time, she had not been assigned to the 125th Street Station for some time.  Neither had Officer Hernandez.  The 125th Street Station is a very difficult post and is considered a punishment assignment.  While defendant assigned plaintiff there, it did not assign Officer Hernandez there.  This was also blatant harassment, discrimination and retaliation.  It was intended to retaliate against plaintiff and to dissuade her from engaging in protected activity, while favoring Officer Hernandez.

59.     This situation continued until on or about October 5, 2018, when Officer Hernandez resigned, allegedly because he appeared for duty intoxicated and was disrespectful to a supervisor.  Plaintiff was viewed by many to be the catalyst behind Officer Hernandez' resignation.

60.     Just when plaintiff thought that her job environment would finally improve, she became the victim of a personnel action that was discriminatory and retaliatory based upon her gender and protected activity.

61.     On February 13, 2019, defendant suspended plaintiff indefinitely without pay.  Her weapon and shield were also taken away from her.  This action was not justified.

62.     Officers assigned to District 5 routinely use rooms within Grand Central

Terminal during off hours – when the terminal is closed.  Other officers and plaintiff had used a room on the 6th floor of the terminal.  In this room, some officers charged their phones.  Some would eat their meals.  Defendant always condoned the use of this room.

63.     On February 12, 2019, after Grand Central Terminal had closed for the night, plaintiff utilized that room.  She was charging her phone and watching Facebook videos. Suddenly, Lt. Rockett and Lt. Pontorno of Internal Affairs and plaintiff's two supervisors, Sgt. Wisniewski and Lt. Perrault, entered the room.  They escorted plaintiff to the District Base and took her weapon and shield.  Lt. Rockett told plaintiff that she was being placed on suspension. Plaintiff was not told why she was suspended or what she had allegedly done wrong. Personnel Order 19-19 dated February 13, 2019 confirmed the fact of the suspension.  Plaintiff was suspended without pay for eleven (11) days.

64.     This suspension was discriminatory, based upon the fact that plaintiff is a female and was retaliatory on account of her prior protected activity.  Several male officers, including Officer Hernandez, had been observed by Lt. Rockett and Lt. Pontorno in rooms that were supposedly off limits.  Officer Hernandez was discovered by Lt. Rockett and Lt. Pontorno in an abandoned room that officers were told not to go in.  Officer Hernandez was discovered sitting in a chair, with the lights off and his gun belt off.  He only received a Letter of Instruction.

65.     Prior to that, a male Sergeant was discovered in an empty storage room on the lower level of Grand Central Terminal.  Lt. Pontorno contacted the Sergeant who said he went into the room to charge his phone.  The Sergeant was not punished.

66.     On another occasion, Lt. Rockett and Lt. Pontorno found a male officer in another storage room on the lower level of Grand Central Terminal.  An entry was made in the officer's

memo book and then they left, leaving the officer in the room.  The officer received no discipline.

67.    Plaintiff being suspended, with no reason and no warning, was differing treatment.  All officers utilize rooms in Grand Central Terminal when the terminal is closed. Plaintiff was the only one suspended.

68.    The said actions have been unjustified and without legitimate reason.  Defendant and its agents have discriminated and retaliated against plaintiff and created a hostile work environment for no good reason and have acted for purposes not related to legitimate job related reasons, to wit: plaintiff's gender and prior protected activity, and to chill her right to engage in protected activity.

69.    Defendant has and continues to engage in said action with the intent to make plaintiff's job environment so intolerable that she will have no choice but to resign.

70.    As a result of the unlawful discrimination, retaliation and hostile work environment complained of, plaintiff has been severely damaged.  Her job standing has been adversely affected.  She has been damaged physically and emotionally.  She has developed anxiety and emotional stress.  Plaintiff  has also suffered embarrassment, humiliation and damage to her professional career and reputation.  She has also incurred attorney's fees.

### Count I

71.    Plaintiff alleges that the complained of actions violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., in that the actions of defendant constitute unlawful employment practices because of plaintiff's gender.

72.    By its actions, defendant has treated plaintiff differently from other employees

on account of gender and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et* seq.

73.     By its actions, defendant has also subjected plaintiff to a hostile work environment because of her gender.

74.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

75.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

76.     Defendant cannot demonstrate any legitimate, non-discriminatory, non-retaliatory reason for the actions complained of herein; nor can its actions be otherwise justified. Any alleged non-discriminatory and/or non-retaliatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

77.     By reason of the actions and inactions of defendant, whereby defendant engaged in unlawful discriminatory practices based upon gender, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

78.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorney fees, expert fees and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

## Count II

79.     Plaintiff alleges that the complained of actions violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., in that the actions of defendant constitute unlawful employment practices because of plaintiff's protected activity.

80.     By its actions, defendant has treated plaintiff differently from other employees on account of her protected activity and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et* seq.

81.     By its actions, defendant has also subjected plaintiff to a hostile work environment because of her protected activity.

82.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

83.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

84.     Defendant cannot demonstrate any legitimate, non-discriminatory, non-retaliatory reason for the actions complained of herein; nor can its actions be otherwise justified. Any alleged non-discriminatory and/or non-retaliatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

85.     By reason of the actions and inactions of defendant, whereby defendant engaged in unlawful discriminatory practices based upon protected activity, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers;

embarrassment; humiliation and was otherwise greatly injured.

86.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorney fees, expert fees and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count III

87.     Plaintiff alleges that the complained of actions violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of defendant constitute unlawful employment practices because of plaintiff's gender.

88.     By its actions, defendant has treated plaintiff differently from other employees on account of her gender and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law.

89.     By its actions, defendant has also subjected plaintiff to a hostile work environment because of her gender.

90.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

91.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

92.     Defendant cannot demonstrate any legitimate, non-discriminatory, non-retaliatory reason for the actions complained of herein; nor can its actions be otherwise justified. Any alleged non-discriminatory and/or non-retaliatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

93.     By reason of the actions and inactions of defendant, whereby defendant engaged in unlawful discriminatory practices based upon gender, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

94.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, expert fees and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count IV

95.     Plaintiff alleges that the complained of actions violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of defendant constitute unlawful employment practices because of plaintiff's protected activity.

96.     By its actions, defendant has treated plaintiff differently from other employees on account of her protected activity and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law.

97.     By its actions, defendant has also subjected plaintiff to a hostile work environment because of her protected activity.

98.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

99.     The actions and conduct of defendant constitutes unlawful behavior and their

purpose was to create an intimidating, hostile and offensive work environment.

100.     Defendant cannot demonstrate any legitimate, non-discriminatory, non-retaliatory reason for the actions complained of herein; nor can its actions be otherwise justified. Any alleged non-discriminatory and/or non-retaliatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

101.     By reason of the actions and inactions of defendant, whereby defendant engaged in unlawful discriminatory practices based upon her protected activity, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

102.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, expert fees and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

## **Prayer for Relief**

WHEREFORE, plaintiff respectfully requests that judgment be entered against defendant, on each and every count hereinbefore pled, awarding her appropriate and equitable injunctive relief, compensatory damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined at trial with appropriate interest.

Dated: Jericho, New York
        September 4, 2019

                                        Respectfully submitted,
                                        WOLIN & WOLIN

                                        *Alan E. Wolin*
                                        By: Alan E. Wolin, Esq.
                                        Attorney for *Plaintiff*
                                        420 Jericho Turnpike, Suite 215
                                        Jericho, New York 11753
                                        Telephone: (516) 938-1199
                                        Facsimile: (516) 938-1178
                                        E-Mail: wolinlaw@aol.com

**VERIFICATION**

State of New York   )
                     )ss.:
County of Nassau   )

      JENNY CRUZ, being duly sworn, deposes and says:

      I am the plaintiff in the within action and I have read the foregoing Verified Complaint

and know the contents thereof, the same is true to my knowledge, except as to those matters

therein stated to be based upon information and belief, and as to those matters I believe them

to be true.

                                         JENNY CRUZ

Sworn to before me this
4th day of September, 2019

Notary Public

JILL A. FIEMAN
Notary Public, State of New York
No. 4993075
Qualified in Nassau County
Commission Expires 3/9/2022